IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-8034 |
| | ) | |
| Jose Felix Vilchis Rojas, | ) | Judge Sharon Johnson Coleman |
| a/k/a Jose F. Vilchis, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The United States ("the Government") brought this action seeking to denaturalize defendant Jose Felix Vilchis Rojas, a/k/a Jose F. Vilchis ("Vilchis") on the grounds that he obtained U.S. citizenship illegally or by willful misrepresentation or concealment of a material fact. Defendant never entered an appearance or responded to the Complaint. The Government now moves for summary judgement. Defendant never responded to the Government's motion. For the reasons stated below, the Government's motion [20] is granted.

**Background**

    **A. Local Rule 56.1 Statement of Facts**

Pursuant to Local Rule 56.1(b), the Government filed a Rule 56.1 statement of material facts in support of its motion for summary judgment. Vilchis failed to respond to the Government's statement of facts and submitted no evidence of his own. Because Vilchis did not respond to the Government's statement of facts, the Court accepts the Government's version of the facts to the extent it is properly supported by evidence, *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012), but sets forth the facts as favorably to Vilchis as the record and Local Rule 56.1 permit.

Defendant Vilchis was born in Mexico in September 1950. (*See* Pl.'s Local Rule 56.1(a) Statement of Material Facts ("PSOF") at ¶ 1). He is currently incarcerated at the Will County Adult Detention Facility in Joliet, Illinois.[1] (*Id.* at ¶ 2).

Vilchis competed for Mexico in men's gymnastics at the 1968 Summer Olympics before relocating to Illinois, where he worked as a gymnastics coach in Chicago and its suburbs. (*Id.* at ¶ 8). In or around January 1985 through June 1988, Vilchis worked as a gymnastics coach at Beverly Gymnastics Center in Chicago. (*Id.* at ¶ 5). From June 1988 to June 1994, Vilchis worked as a gymnastics coach at American Academy of Gymnastics ("AAG"), in Wheeling, Illinois. (*Id.* at ¶ 6). From March 1992 to around December 1997, Vilchis worked as a gymnastics coach at Illinois Gymnastic experience, which he owned in South Holland, Illinois. (*Id.* at ¶ 7). During the above-mentioned time periods, Vilchis, who was then 35 to 47 years old, used his position as a gymnastics coach to engage in nonconsensual sex acts with minor gymnasts whom he was training.

**Vilchis's Crimes Against G.R.**

From 1988 through February 1992, Vilchis was G.R.'s gymnastics coach at AAG. (*Id.* at ¶¶ 32, 35). Sometime around 1988, while G.R. was at practice, "Vilchis intentionally touched G.R.'s vagina with his fingers over the white leotard she was wearing and told her that she would not be able to wear that type of leotard when she got older because she would grow pubic hair." (*Id.* at ¶ 32). G.R. was about 10 years old at the time. (*Id.*). Beginning in January 1990, when G.R. was 11 years old, and continuing until mid-February 1992, when she was 13 years old, "Vilchis'[s] touching of G.R.'s hips, pelvic area, and vagina advanced to more serious sexual [acts]" without her consent. (*Id.* at ¶ 35). Specifically, Vilchis would regularly engage in sexual acts with G.R. in two primary ways throughout this time period: "(1) he would pull her leotard to the side and place his penis

---

[1] Vilchis is awaiting trial in the Circuit Court of Will County on charges of 18 counts of criminal sexual assault and aggravated criminal sexual abuse for unrelated alleged acts that post-date his naturalization. (*Id.* at ¶ 3, fn. 2).

between her bare butt cheeks, and (2) he would pull her leotard to the side and perform oral sex on her by touching his mouth and lips to her vagina and penetrating her vagina with his tongue." (*Id.*).

**Vilchis's Crimes Against J.P.**

From around February or March of 1997 to approximately December of 1997 or January of 1988, Vilchis was J.P.'s gymnastics coach at IGE. (*Id.* at ¶ 47). In the summer of 1997, during a private lesson and while J.P. was in a handstand position, "Vilchis restrained each of her legs with one hand on each leg and …. then bent over and kissed her vulva (labia) over her leotard with his mouth and lips." (*Id.* at ¶ 51). J.P. was 14 years old at the time. (*Id.*). Following this incident, Vilchis instructed J.P. on multiple occasions not to tell anyone about what he had done. (*Id.* at ¶ 53). Throughout the time that Vilchis coached J.P., "Vilchis would also fondle J.P.'s butt." (*Id.* at ¶ 54).

**Vilchis's Naturalization**

On May 30, 1991, Vilchis applied for permanent residency in the United States by submitting a Form I-485 to the Immigration and Naturalization Service ("INS"). (*Id.* at ¶ 58). On October 8, 1991, the INS approved Vilchis's Form I-485 application and he became a permanent resident. (*Id.* at ¶ 66). On or around December 24, 1996, Vilchis applied for naturalization by submitting a Form N-400 to the INS. (*Id.* at ¶ 70). On April 24, 1997 the INS approved Vilchis's Form N-400. (*Id.* at ¶ 75). Vilchis then took the oath of allegiance to become a U.S. citizen on July 1, 1997. (*Id.* at ¶ 80).

On December 9, 2019, the Government filed this action to denaturalize Vilchis pursuant to 8 U.S.C. § 1451(a). The Complaint contains three counts, which the Government contends offer separate bases for the requested relief. Specifically, the Government alleges that Vilchis should be denaturalized because he illegally procured his citizenship based on the following facts: (1) he was never lawfully admitted for permanent residence after having obtained that status by fraud or willful misrepresentation (Count I), (2) he committed "unlawful acts" that adversely reflected on his moral

3

character (Count II), and (3) he willfully misrepresented and concealed material facts (Count III). As stated earlier, Vilchis did not appear in this matter. The Government now moves for summary judgment on all three claims.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A "nonmovant's failure to respond to a summary judgment motion ... does not, of course, automatically result in judgment for the movant." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (internal citations omitted). "The ultimate burden of persuasion remains with [the Government] to show that it is entitled to judgment as a matter of law." *Id.*

**Discussion**

Under the Immigration and Naturalization Act, the Government may seek denaturalization of a naturalized citizen if naturalization was either "illegally procured" or "procured by concealing a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). "Naturalization is illegally procured if any statutory requirement is not met at the time naturalization is granted." *United States v. Kairys*, 782 F.2d 1374, 1376 n.1 (7th Cir. 1986) (citing *Fedorenko v. United States*, 449 U.S. 490, 506 (1981)). One of these statutory requirements is that the "applicant ... during the five years immediately preceding the date of filing his application ... has been and still is a person of good moral character." 8 U.S.C. § 1451(a); *see* 8 C.F.R. § 316.10(a)(1) (stating that the five-year period

"includes the period between the examination and the administration of the oath of allegiance"). An applicant shall be found to lack good moral character if, during the statutory period, the applicant "[c]ommitted unlawful acts that adversely reflect upon the applicant's moral character[.]" 8 C.F.R. § 316.10(b)(3). To prevail in a denaturalization proceeding, the Government bears the burden to prove its claims of lack of good moral character by clear, unequivocal, and convincing evidence. *Fedorenko*, 449 U.S. 490, 505 (1981) (internal quotations omitted). If the Government carries its high burden, a court lacks discretion and must enter a judgment of denaturalization. *Id.* at 517.

The Government moved for summary judgment on Count II, arguing that Vilchis illegally procured his citizenship because Vilchis committed "unlawful acts" during the statutory period that adversely reflect on his moral character. The statutory period for Vilchis's showing of good moral character started on December 24, 1991 (five years before he submitted his Form N-400) and continued to July 1, 1997 (the date Vilchis took the oath of allegiance). The undisputed facts demonstrate that Vilchis committed unlawful acts that adversely reflected on his moral character during the statutory period when he performed sexual acts with minors G.R. and J.P. against their will. *See United States v. Dave*, 652 F. App'x 468 (7th Cir. 2016) (finding that having sex with a minor adversely reflected on the defendant's moral character). By committing these unlawful acts which adversely reflected on his moral character, Vilchis was statutorily ineligible for naturalization. Therefore, the Court must revoke Vilchis's citizenship because it was illegally procured. Moreover, "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). Vilchis failed to appear in this case and chose to stay silent instead of "set[ting] forth specific facts showing that there is a genuine issue for trial." *Id.* Accordingly, the Court grants the Government's motion for summary judgment on Count II.

**Conclusion**

For the foregoing reasons, the Government's motion for summary judgment [20] is granted as to Count II. Because the Court's decision on Count II is dispositive of this case, the Court need not address the Government's arguments pertaining to Counts I and III.

**IT IS SO ORDERED.**

Date: 5/5/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge